ESTATE OF CRAWFORD

SILVA *v.* OLD KENT BANK & TRUST COMPANY

1. WILLS—CONTEST—DELAYED APPEAL—UNPAID DEBTS.
   Probate court's admission of a will was subject to a petition to take a delayed appeal where the circuit court found that all of the estate's debts had not been paid (MCLA §§ 701.43, 701.44).

2. WILLS — CONTEST — SETTLEMENT — SPENDTHRIFT TRUSTS — DODGE ACT.
   The existence of a properly-made motion to take a delayed appeal from an order admitting decedent's will to probate gave the circuit court the power, under the statute allowing the settlement of good-faith controversies, to terminate or modify a testamentary spendthrift trust established in the will (MCLA § 702.45).

---

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 4 Am Jur 2d, Appeal and Error § 139 *et seq.*

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 March 31, 1971, at Grand Rapids. (Docket No. 9524.) Decided June 22, 1971.

A. Clare Silva moved to take a delayed appeal in Kent County Circuit Court, contesting admission of the will of Ethel C. Crawford to probate. Old Kent Bank & Trust Company, executor, moved to dismiss Silva's motion. Settlement of will contest reached and an order of the court entered approving the settlement. Old Kent Bank & Trust Company appeals. Affirmed.

*Conlin, Conlin, McKenney & Meader*, for plaintiff.

*Warner, Norcross & Judd* (by *Thomas R. Winquist* and *Edward Malinzak*), for the Old Kent Bank & Trust Company.

Before: HOLBROOK, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J. In this will contest we pass on the validity of a settlement entered into by disputants under the statutory proceeding known as the Dodge Act. MCLA § 702.45 (Stat Ann 1962 Rev § 27.3178 [115]).

Decedent, Ethel G. Crawford, died on March 6, 1969, leaving an estate valued at approximately $634,000. As the executor nominated and appointed by decedent, appellant bank petitioned for probate of the will and the determination of heirs. The dispositive provisions of this testamentary document differed from previous wills in that it provided

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6 § 23 as amended in 1968.

a trust perpetual as to three charitable beneficiaries and "spendthrift" trusts as to two individuals. Under the terms of the will, appellant bank would be perpetual trustee of the entire assets of the estate after settling of claims. On April 8, 1969, the petition was granted and the will admitted to probate in Kent County.

Almost six months later, on October 6, 1969, A. Clare Silva, sole heir at law of the testatrix, and appellee in the instant cause, filed notice of hearing on a motion to take a delayed appeal to the Kent County Circuit Court from the order of the probate court previously mentioned. In his affidavit appended to the petition appellee asserted his failure to contest the will originally was explicable by reason of the fact that his previously retained counsel had not followed instructions and had failed to file objections to probate of the will. He alleged that when he became aware of his misplaced reliance, he retained other counsel who then immediately raised the grounds[1] he relied on to challenge the validity of the instrument.

On November 17, 1969, appellant responded by filing with circuit court both a motion to dismiss appellee's motion for leave to take a delayed appeal and an accompanying affidavit indicating prior issuance of a probate court order stating that appellant had satisfied all claims against the estate. While the petition and the motions to dismiss it still impended, all parties interested in the estate, except appellant bank, entered into and filed an agreement providing that the instrument should be admitted to

---

[1] Allegations are made of outstanding claims against the estate and that undue influence was exerted by appellant and one of the trust beneficiaries. Appellee has also asserted that probate of the instrument should be denied because of the existence of duress, lack of testamentary capacity, improper execution of the purported will, and revocation thereof.

probate and further stating that the entire corpus of the estate should be distributed among the interested parties. In furtherance of this accord, a petition was filed in circuit court seeking approval of the agreement above mentioned. After opportunity for oral argument and a finding that all the beneficiaries under the will were parties to the settlement resolving a good-faith controversy, the court entered an order approving it. Although appellant was directed to execute the settlement as per order of the court, it has not acted thereon.

Despite the excellence and vigor of the oral arguments by both counsel, we find difficulty in accepting the stated questions on appeal of either the appellant or appellee as stated in their briefs. Each is chargeable with a logical error which so often occurs in cases of intense advocacy. The answer, or at least partial answer, to the question posed is the included premise of the question. Exemplary thereof, appellant queries:

"Can a circuit court, after the probate court has ordered the will admitted to probate, enter an order which terminates a trust established by a will, in accordance with MSA § 21.3178(115) (the so-called 'Dodge Act') without showing that a 'good-faith controversy' exists between the parties to a will as required by the 'Dodge Act'?

"The circuit court said 'Yes'.

"Appellant contends the answer should be 'No'."

Very obviously the answer to the question as stated is a resounding "No". The trouble is, the real question is: Did a good-faith controversy in fact exist within the terms of the involved statute and the case precedent applying it?

Appellee, in like manner, quite simply assumes the existence of the requisite "good-faith controversy" by asking:

"Does the circuit court have authority to approve a settlement of a good-faith controversy over the validity of a will containing a spendthrift trust?

"The circuit court says 'Yes'.

"The Appellee says 'Yes'.

"The Appellant says 'No'."

We conceive the issue to be as follows:

Did the petition for delayed appeal of the order admitting a will to probate, yet unacted upon by the circuit court, establish the existence of a good-faith controversy in this case under the involved statute and case interpretation thereof?

The question is threshold, for without an answer all of the subsequent tangential questions raised cannot be reached.

The learned trial judge recognized this in his statement of the issue. We quote him:

"The question is:

"This matter having come up to this court on the law side, by virtue of the fact that of asking for a delayed appeal from the admission of the will in probate, whether the court can now, determine, whether it has jurisdiction, equitable jurisdiction, to approve this settlement. Which, in other words, means do we have to dispose of this petition for delayed appeal first, before I can go on."

We agree. We cannot determine whether the spendthrift trust is susceptible of abrogation or modification under the rule in *Rose*[2] or in *Dutton*[3] until we know whether the instrument to be the subject of the settlement was still under attack as to its proper admissibility to probate, the crucial distinction between *Rose* and *Dutton*.

If the action of the probate court in admitting the will was not subject to a delayed appeal, this case

---

[2] *Rose* v. *Southern Michigan National Bank* (1931), 255 Mich 275.
[3] *In re Dutton's Estate* (1956), 347 Mich 186.

presumptively falls within the rule of *Rose, supra.* If we find, however, that the order was vulnerable to attack, the rationale of *Dutton* might well prevail.

The controlling statute, as it was *then*[4] in force, provided:

"If any person aggrieved by any act of the judge of probate shall from any cause, without default on his part, have omitted to claim or prosecute his appeal according to law, the circuit court, if it shall appear that justice requires a revision of the case, may, on the petition of the party aggrieved, and upon such terms as it shall deem reasonable, allow an appeal to be taken and prosecuted with the same effect as if it had been done seasonably." MCLA § 701.43 (Stat Ann 1962 Rev § 27.3178[43]).

This, however, must be read in connection with the next following section.

"No such appeal as provided in section 43 shall be allowed without due notice to the party adversely interested, nor unless the petition therefor shall be filed within 1 year after the making of the judgment or order complained of, except as provided in section 22 of chapter 12A, and then such appeal shall not be allowed *if the debts of the estate have been paid,* or the estate distributed in due course of law." MCLA § 701.44 (Stat Ann 1962 Rev § 27.3178[44].) (Emphasis supplied.)

In the motion to dismiss the delayed appeal, the attorney for appellant bank included an affidavit stating in part:

"The affidavit of the executor * * * demonstrates that an order was entered * * * allowing various claims filed against said estate, and estab-

---

[4] For cases and proceedings commenced after January 1, 1971, see MCLA §§ 701.45a to 701.45d, 705.26, 712A.22.

lishes that all *such* claims have been paid." (Emphasis supplied.)

Contrariwise, the trial judge made the following finding of fact:

"Counsel mentioned something about the debts, once the debts have been filed they cannot file an appeal, but I have examined the file, there are certain debts, but all of them have not been paid by the probate court as I view the file. There hasn't been an order closing the payment of any debts."

As against the conclusionary affidavit and the finding by the trial judge, we accept his finding.

Having so found, the judge then logically proceeded to point out that the executor-bank in fact recognized that a controversy existed under the statute because, in a petition filed *subsequent* to the order admitting the will to probate, the bank requested:

"that it be authorized to retain Warner, Norcross and Judd, and Thomas Whinery, as Counsel, for the purpose of sustaining the Will and that the reasonable expense thereof, * * * be charged against said estate."

The judge stated:

" * * * the executors themselves have stated there is a controversy."

We, likewise, conclude that a good-faith controversy existed within the meaning of the Dodge Act, but *not* merely because the executor-bank said so, in effect, by petitioning for authority to pay the expenses and services in connection with its effort to sustain the will. This might certainly be considered as one of the indicia of the existence of controversy, but not necessarily controlling. Rather, we conclude

that because the trial court found as a matter of fact that all of the claims against the estate had not been paid, there was no absolute statutory bar to the petition to take a delayed appeal. This being established, the circuit court was authorized to grant or deny it. If it were granted, it would be indisputable that a controversy in the Dodge Act sense existed.

It was for this reason that the trial judge found as follows:

"Rather than have a contest on the petition for delayed appeal, then rather than to have a long will contest or an appeal to the Court of Appeals on the delayed appeal if I granted it, and have an appeal on that, rather than have further litigation and maybe we will be successful and maybe we won't, * * * and the compromise is that it can be reasonably done. * * * I believe this court, under the provisions of the Dodge Act, under the powers of the court in equity, under the decision in the *Dutton* case and also especially in the *Reeder* case, I not only have the right, but I should in the exercise of my powers in equity to approve the settlement, and I so find."

For purposes of decisional clarity, we deem it advisable to separate the dual action of the trial judge in accepting jurisdiction under the Dodge Act and confirming the settlement thereunder. In so doing, we must advert to another action of the trial judge so that the full posture of the case on appeal may be understood. When the judge took jurisdiction of the controversy without first deciding the motion for the delayed appeal, alert counsel for the appellee immediately sensed that there was a danger that the statutory bar to delayed appeal might become operative if all the claims were paid before

the court formally acted upon the petition. He addressed himself immediately to the court on the subject.

"*Mr. Meader:* Yes, I have three claims which we have not filed with the probate court, because we did not want * * * someone to pay these debts and therefore bar us from coming to court. If all debts of the estate had been paid this court has no jurisdiction to entertain our position, our claim for delayed appeal.

\* \* \*

"There is still eighteen months or part of the eighteen months after the hearing on claims order that has not run, we can still file delayed claims.

"*The Court:* Yes, those allegations are contained in your petition.

\* \* \*

"*Mr. Meader:* * * * and we will file them if we have protection of the circuit court that they will not be paid and therefore bar us from continuing our proceeding before this court."

Thereupon the judge entered an order providing in part as follows:

"It is hereby ordered that the tardy claims in the petition of A. Clare Silva, Sr. shall be filed with the Probate Court for the County of Kent for allowance * * * the Old Kent Bank and Trust Company, its successors, agents, attorneys or other persons acting in concert with it shall be enjoined and restrained from paying such tardy claims until further order of the [circuit] court."

The next issue then falls neatly into place. It is appellant's second stated question (though numerically first in the brief):

"Can a circuit court, after the probate court has ordered the will admitted to probate, enter an order in accordance with MSA § 27.3178(115) (the so-called 'Dodge Act') which terminates a trust created pursuant to the terms of the will, and further to direct the executor of the estate to execute certain documents which terminate the trust agreement?"

Appellant, of course, contends the circuit court could not, relying on *Rose, supra*. But again, as stated, the question omits a crucial element; namely, that an appeal from the order admitting the will to probate impended, and that no absolute statutory bar to the circuit court's granting it was of record. In view of this situation, obviously *Rose* does not apply. *Rose* stands for the proposition that the so-called "spendthrift" trust involved in that case was not open to attack, because the validity of the testamentary instrument involved had been finally adjudicated. Not so here—the petition for delayed appeal placed in issue the validity of the will by allegations of infirmities in it going to its validity, and hence its entitlement to probate.

*Dutton, supra,* held that *Rose* was inapplicable in this precise situation. This is what Mr. Justice Black said so clearly in *Dutton*. He pointed out that the *Rose* prohibition did not operate when the testamentary instrument had not survived the "ordeal of probate". In this case too, the "ordeal" was not over.

Thus, the answer to the question of whether the circuit court could terminate or modify the trust in this case by applying the Dodge Act is incontestably affirmative.

In finality then, we hold a good-faith controversy under the above statute did exist in this case. There

was no abuse of discretion in approving the proposed settlement.

    The order of the trial court is affirmed.

    Costs to the appellee.

    All concurred.